IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:23-CR-00123 |
| v. | (Chief Judge Brann) |
| JEREMY STEPHEN HEEMAN, | |
| Defendant. | |

**MEMORANDUM OPINION**

AUGUST 22, 2024

## I.   FACTUAL BACKGROUND

In April 2021, Defendant Jeremy Stephen Heeman pleaded guilty to multiple charges filed against him in the Court of Common Pleas of Centre County, Pennsylvania.[1] During the plea negotiations, Heeman expressed a desire to be supervised by the Pennsylvania Board of Probation and Parole, rather than Centre County Probation, after his jail term was completed.[2] In the an offer communicated to Heeman's counsel on April 6, 2021, the Centre County District Attorney's Office gave Heeman two options: he could either "take a county max with county supervision or he can take the 15 month min[imum] with state supervision."[3] Heeman opted for the latter.

---

[1]  Doc. 27, at 2.
[2]  *Id.*
[3]  *Id.* (quoting Def Exh. A, Doc. 27-1).

Shortly after pleading guilty, Heeman, who had been detained pending trial, was eligible for release on parole. In late spring 2021, Heeman's attorney reached out to Centre County Probation, who in turn reached out to the State Correctional Institution at Rockview for guidance as to how the Board of Probation and Parole would contact Heeman for paroling purposes.[4] On May 27, 2021, Heeman's counsel was informed by Ashley Delker with Centre County Probation that the Pennsylvania Board of Probation and Parole would handle Heeman's parole; Centre County Probation was to send a form to the "central office" which would "initiate[] his institutional tracking and such."[5] Three months later, on August 27, 2021, in response to follow ups from both Heeman and his counsel, Delker responded:

> As I have explained to CCCF and your attorney several times, you were sentenced to an SCI sentence. Your parole is handled by PA Board of Probation and Parole. The PA Court of Common Pleas has no authority or interest in your parole.[6]

Despite the terms of his plea agreement and the representations made by Delker, the Pennsylvania Board of Probation and Parole did not undertake supervision of Heeman upon his release.[7] On November 4, 2021, the Centre County Court of Common Pleas granted Heeman parole to the Centre County Probation Department.[8] The Centre County Adult Probation and Parole Department of

---

[4] Def. Exh. B, Doc. 27-2.
[5] Id.
[6] Def. Exh. C., Doc. 27-3.
[7] Doc. 27, at 4.
[8] Def. Exh. D, Doc. 27-4.

Conditions Supervision form, which Heeman did not sign, includes the following condition:

> I expressly consent to the search of my person, property, and residence without a warrant by any Officer of the Centre County Probation and Parole Department. Any items, the possession of which constitutes a violation of my supervision conditions, shall be subject to seizure, and may be used as evidence in the revocation process.[9]

On January 9, 2023, Centre County Probation Officers arrived at Heeman's residence to conduct an "unscheduled field contact." When probation officers arrived at Heeman's residence, he was in a workshop on the property. During the initial interaction, Heeman explained that he was to be supervised by the Pennsylvania Board of Probation and Parole, not Centre County Probation, and offered to show the probation officers paperwork to that effect.

The officers walked with Heeman to his apartment where he produced that paperwork. While inside the residence, the officers saw contraband in plain view. The officers then alerted the Pennsylvania State Police as to what they found at Heeman's residence, PSP then obtained a warrant, conducted a search, and found two firearms, ammunition, and methamphetamine.

Heeman contends that the officers entered his apartment without permission, and therefore the resulting search was unconstitutional. The Government insists that Heeman consented to the officers' entry to the home.

---

[9] Def. Exh. E, Doc. 27-5.

## II.     PROCEDURAL BACKGROUND

On May 17, 2023, a grand jury sitting in the Middle District of Pennsylvania returned a four-count indictment, charging Heeman with Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) (Count I); Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c) (Count II); Possession of an Unregistered Firearm in violation of 26 U.S.C. § 5861(d) (Count III); and Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) (Count IV).[10] On June 5, 2023, Heeman appeared before Magistrate Judge William I. Arbuckle and pleaded not guilty to the charges in the Indictment.[11] Judge Arbuckle detained Heeman pending trial.[12]

On March 14, 2024, Heeman filed a Motion to Suppress[13] and a Motion to Dismiss Counts II-IV of the Indictment.[14] The parties have briefed Heeman's Motions and the Court held a suppression hearing on July 26, 2024.[15] Heeman's Motions are ripe for disposition and, for the reasons below, they are denied.

---

[10]   Indictment, Doc. 1.
[11]   Doc. 16.
[12]   Doc. 17.
[13]   Doc. 26.
[14]   Doc. 28.
[15]   Br. Supp. Mot. to Suppress, Doc. 27; Opp'n Mot. to Suppress, Doc. 37; Reply Mot. to Suppress, Doc. 37; Br. Supp. Mot. to Dismiss, Doc. 29; Opp'n Mot. to Dismiss, Doc. 36. The Court also requested, and the parties filed, supplemental briefing regarding the impact of the United States Supreme Court's decision in *U.S. v. Rahimi*, 144 S. Ct. 1889 (2024), which was issued while Heeman's Motions were pending. Docs. 40-42.

## III.   MOTION TO SUPPRESS

"Although the Fourth Amendment to the United States Constitution generally forbids warrantless entry into and search of a person's home, consent is a well-established exception to the warrant requirement imposed by that amendment."[16] "To justify [entry and] search based on consent, the Government 'has the burden of proving that the consent was, in fact, freely and voluntarily given.'"[17] Voluntariness is determined "by examining the totality of the circumstances."[18]

Before turning to the issue of whether Heeman voluntarily consented to the parole officers entering his home, the Court addresses the Government's argument that consent was unnecessary due to Heeman's status as a parolee. While Pennsylvania law and Heeman's conditions of parole provide that he was subject to warrantless searches, neither waive the requirement that a search (unless consented to) be supported by reasonable suspicion.[19] Though the Government has pointed to decisions of the Pennsylvania Superior Court which have held otherwise, this Court is, as the Government is no doubt aware, bound by the precedential decisions of the Third Circuit.[20]

---

[16] *U.S. v. Brown*, 627 Fed. Appx. 163, 166 (3d Cir. 2015) (citing *United States v. Price,* 558 F.3d 270, 277 (3d Cir.2009)).
[17] *Id.* (quoting *Price*, 558 F.3d at 277-78; *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968)).
[18] *Price*, 558 F.3d at 278 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973)).
[19] *See supra* n.9 (conditions of release discussing warrantless searches but silent as to reasonable suspicion); *U.S. v. Henley*, 941 F.3d 646, 651 (3d Cir. 2019) (citing 61 Pa.C.S. § 6153, noting that reasonable suspicion is required under Pennsylvania law).
[20] Doc. 37, Section III.A. (citing *Commonwealth v. Parker*, 152 A. 3d 309 (Pa. Super. 2016); *Commonwealth v. Smith*, 85 A.3d 530, 536 (Pa. Super. 2014)).

Therefore, the Court turns to the issue of whether Heeman invited the parole officers into his home. During the hearing, parole officer Cody Young testified that, as they approached the door to the apartment, Heeman said that, while he did not mind if the officers came into his home, he did not believe they had the authority to supervise him.[21] Heeman, on the other hand, testified that, Young said the parole officers were allowed to enter any homes of individuals they supervise before entering without permission.[22]

Having listened to and considered the testimony and reviewed the transcript, the Court finds Young's testimony credible. In addition to Young, two other parole officers, John Toner and Eric Swope, who were present testified during the hearing. Their testimony regarding the events of the visit were consistent with, and therefore corroborate, Young's version of events.[23] On the other hand, Heeman's recollection of certain events differed from that of his attorney, Steven Trialonas, Esquire, who had represented him in proceedings regarding his parole and related criminal convictions.[24]

---

[21] Hr'g Tr., Doc. 49, 52:17-19.
[22] *Id.* 128:23-129:5.
[23] *See, e.g., id.* 54:7-25, 89:10-90:19, 105:11-106:4 (testimony by the three officers describing scene at Heeman's kitchen table).
[24] *Id.* at 139:11-141:9.

Accordingly, the Court finds that the Government has satisfied its burden to show that Heeman voluntarily permitted the parole officers entry to his home. Heeman's Motion to Suppress Evidence is denied.

## IV. MOTION TO DISMISS

Heeman also challenges the constitutionality of Counts II, III, and IV of the Indictment, which charge him with the unlawful possession of firearms. The Court addresses Heeman's argument as to each Count in turn.

### A. Count II – 18 U.S.C. § 924(c)

Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal 'crime of violence or drug trafficking crime'"[25] Heeman argues that § 924(c)'s criminalization of "passive possession of a firearm in the same place as illegal drugs" is inconsistent with the Nation's history and tradition of firearm regulation.[26] Recently, my friend and colleague, the Honorable Julia K. Munley, rejected a similar challenge to the constitutionality of § 924(c) in *United States v. Birry*.[27] Judge Munley's opinion, issued after the Supreme Court's recent decision in *Rahimi*, extensively discusses how § 924(c) is, in fact, consistent with the Nation's history and tradition of firearm regulation. I find Judge Munley's exhaustive analysis

---

[25] *U.S. v. Davis*, 588 U.S. 445, 449 (2019) (quoting 18 U.S.C. § 924(c)(1)(A)).
[26] Doc. 29, at 10.
[27] No. 3:23CR288, 2024 WL 3540989 (M.D. Pa. July 25, 2024).

of the historical analogues to § 924(c) and the applicable caselaw persuasive and adopt her reasoning and holding accordingly. Heeman's Motion to Dismiss Count II of the Indictment is denied.

### B. Count III – 26 U.S.C. § 5861(d)

Heeman additionally seeks to dismiss Count III, charging him with possession of a short-barreled shotgun in violation of 26 U.S.C. § 5861(d), on the basis that "short-barreled firearms existed during the 18th century."[28] While that is true, it is also true that the Supreme Court has held that restrictions on the possession of such firearms are not unconstitutional.[29] Heeman's Motion to Dismiss Count III is denied.

### C. Count IV – 18 U.S.C. § 922(g)(1)

Heeman further argues that the Third Circuit's *en banc* decision in *Range v. Att'y Gen. United States of Am.*[30] requires that this Court dismiss Count IV of the Indictment. While Heeman's Motion was pending and after it issued its decision in *United States v. Rahimi*, the United States Supreme Court granted the Government's petition for certiorari in *Range*, vacated the decision of the Third Circuit, and remanded the case for reconsideration following the decision in *Rahimi*.[31]

---

[28] Doc. 29, at 10.
[29] *See D.C. v. Heller*, 554 U.S. 570, 625 (2008) ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.") (citing *U.S. v. Miller*, 307 U.S. 174 (1939)).
[30] *Range v. Atty. Gen. U.S. of Am.*, 69 F.4th 96 (3d Cir. 2023) (*en banc*).
[31] *Garland v. Range*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024).

It is unclear, and beyond this Court's purview, what impact *Rahimi* will have on the Third Circuit's forthcoming opinion in *Range* upon remand.[32] However, even if this Court were to find that the reasoning and outcome of *Range* survives *Rahimi*, it would not help Heeman. After the Third Circuit issued its *en banc* decision in *Range*, this Court, applying that decision, issued its own opinion in *United States v. Reichenbach*.[33] In that case, the Court rejected a constitutional challenge to § 922(g)(1) akin to the one Heeman brings today. The relevant facts of *Reichenbach* are substantially similar to those of this case. Like the defendant in *Reichenbach*, Heeman had previously been convicted of felonies related to possession and distribution of controlled substances.[34]

Nothing in *Rahimi* gives this Court cause to second guess its reasoning in *Reichenbach*, which applies with equal force to Heeman's case.[35] Therefore, Heeman's Motion to Dismiss Count IV is denied.

---

[32] As Heeman notes, the Solicitor General of the United States, in a supplemental brief in support of its petition for certiorari, took the position that *Rahimi* offered no clarity regarding the open question of 18 U.S.C. § 922(g)(1)'s constitutionality. Gov't Supplemental Brief, *Garland v. Range*, No. 23-374 (U.S. June 24, 2024).

[33] No. 4:22-CR-00057, 2023 WL 5916467 (M.D. Pa. Sept. 11, 2023).

[34] *Id.* at *1.

[35] Even if the Court were to revisit the issue, as with her analysis of § 924(c), I find Judge Munley's discussion of the constitutionality of § 922(g) in *Birry* persuasive.

## V. CONCLUSION

For the foregoing reasons, Heeman's Motion to Suppress Evidence and Motion to Dismiss are denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
